UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff<br><br>v.<br><br>CRAIG JORDAN,<br><br>Defendant. | CASE NO. CR21-64RSM<br><br>ORDER DENYING MOTION TO SUPPRESS EVIDENCE |

This matter comes before the Court on Defendant Craig Jordan's Motion to Suppress Evidence recovered by law enforcement pursuant to a Search and Seizure Warrant and Pen-Trap Order that was authorized on March 1, 2021, and subsequent Search and Seizure Warrants authorized on March 31 and May 12, 2021. Dkt. #109. Mr. Jordan has been charged in a Superseding Indictment with possession of cocaine, methamphetamine, and heroin with intent to distribute and carrying a firearm during and in relation to a drug trafficking crime. Dkt. #71. Although his is a stand-alone indictment, this case is related to those brought against approximately two dozen others under the "Michael Walker DTO." *See* Dkts. #114 at 2.

In 2019, the FBI and Seattle Police Department began investigating a drug trafficking organization ("DTO") allegedly controlled by an individual named Michael Walker within the Western District of Washington. On March 1, 2021, DEA Task Force Officer Richard

ORDER – 1

Huntington applied for and obtained a Search Warrant for information to track Mr. Jordan's phone. Dkt. #109, Ex. A ("the GPS Warrant").

This application was 38 pages with 145 paragraphs. It addressed Huntington's training and experience, a run-down of the Michael Walker DTO investigation in general, and a review of authorized interceptions of a phone "TT43" associated with Yusef Parrish, a supplier of narcotics to the DTO. The Court had earlier found probable cause to intercept TT43 in October and November 2020. *Id.* at ¶ 21. Listening in on Mr. Parrish, investigators heard a six-minute phone call with "TT76" on November 11, 2020. TT76 was later shown to belong to Defendant Jordan. Besides small talk, Jordan asked Parrish, "You still be doing your thizzle right?" *Id*. at ¶ 42. Parrish responded, "Oh yeah." *Id*. Jordan then said, "I'm about to get back into the groove again. It's about that time." *Id*. Parrish stated, "I got one in the [unintelligible] now. . . . Probably about, I don't know, seventeen. . . . I'm waiting on him now though." *Id*. Jordan replied, "Now that I got him caught up in school, I could move and groove a little bit." *Id*. Huntington interpreted this call, based on his training and experience, to mean that Jordan was soliciting Parrish to supply him with cocaine to resell. The officer's rationale for this interpretation was that Parrish was deeply involved in cocaine trafficking, that $1,700 ("seventeen") was an appropriate price for an ounce of cocaine in the region at that time, and that "moving and grooving" were terms used by other drug traffickers to refer to drug transactions. *Id*. ¶¶ 42–43. Huntington explained that GPS data for TT76 would help locate the phone, identify its user, and reveal others associated with the ongoing drug trafficking. *Id*. ¶ 44. Magistrate Judge Theiler issued the warrant.

Investigators used the data from that warrant to find TT76 and identify its user, Defendant Jordan. This led to surveillance of Jordan driving his truck to locations where suspected drug

ORDER – 2

deals went down: the Seattle Inn Northgate and the Hillside Motel. Agents never actually observed Jordan making deals, only entering and exiting. Some of his behavior at these locations was consistent with drug dealing—such as entering a room visited by several people who stayed for only moments.

Other information also connected Jordan to TT76 and to the hotels. For example, TT76's phone number was saved as a contact in Yusef Parrish's cell phone. Dkt. #109, Ex. B ("Premises Warrant"), ¶ 210. Parrish had assigned that number the contact name "Jordan." *Id*. Also, a hotel employee connected Jordan to a particular room at the Seattle Inn Northgate. *Id*. ¶ 212.

A confidential source who knows Jordan described him as a cocaine dealer who received one to two ounces of cocaine at a time to redistribute to his customers. Premises Warrant at ¶ 214.

Based on the strength of this evidence—that Jordan was the user of TT76, that Jordan was engaged in drug trafficking, and that he was staying at the Hillside Motel and the Seattle Inn Northgate and using a particular truck—agents applied for a search warrant for Jordan's person, his two hotel rooms, and his truck. *See* Premises Warrant. This warrant was 137 pages, only five of which related to Mr. Jordan. Magistrate Judge Theiler signed the warrant on March 31, 2021. *Id*.

On April 7, 2021, investigators executed dozens of warrants throughout the region, including the search warrants for Jordan's person, truck, and motel rooms. In Jordan's motel room at the Seattle Inn Northgate, agents found about 20 boxes of ammunition, two loaded magazines, nine holsters, 14 scales, a baggie containing a white substance believed to be cocaine, and mail addressed to Jordan. A woman in the room told the police that the ammunition was "his," and that "he" liked "collecting" the scales. Dkt. #114-1. In the motel room at the Hillside

ORDER – 3

Motel, agents found small quantities of drugs, drug paraphernalia, and miscellaneous ammunition. Dkt. #114-2.

Agents found Jordan driving northbound on Aurora in his truck away from the Hillside Motel. In the truck, they located a loaded Glock handgun in the center console along with miscellaneous ammunition. Another loaded handgun, this one an FNX .45, was found in a backpack in the cab. A magazine for the FNX .45, with ammunition, was found in the pocket of a jacket in the backseat of the cab. Also in the backpack, agents found $2,470 in cash, a tablet, and two cell phones, along with a locked black case. The agents forced open the case. Inside were scales, a lighter, and baggies containing 220 grams of powder cocaine, 20 grams of crack cocaine, 32 grams of heroin, and 11 grams of methamphetamine. Elsewhere in the cab of the truck, investigators found lighters, another cell phone, and body armor. Dkt. #114-3.

On May 12, 2021, agents applied for and were granted a warrant to search a Samsung tablet found in Mr. Jordan's truck based on the above. Dkt. #109, Ex. C. They have apparently been unable to access the contents of the tablet.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" and requires that a search warrant issue only upon a finding of probable cause. U.S. Const. amend. IV. The standard of review to be applied by judicial officers in reviewing and approving search warrants is set forth in *Illinois v Gates,* 462 U.S. 213, 103 S. Ct. 2317 (1983), which held that probable cause is a "practical, non-technical conception." 462 U.S. at 232. Furthermore, "[t]he task of the issuing [judicial officer] is simply to make a practical, common sense decision whether, given all of the circumstances set forth in the affidavit. . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id* at 238. In making this determination, the

ORDER – 4

judicial officer is entitled to draw "reasonable inferences" based upon the information set forth in the affidavit. *Id* at 241. Further, the judicial officer is entitled to "rely on the conclusions of experienced law enforcement officers regarding where evidence of a crime is likely to be found." *United States v. Fannin*, 817 F.2nd 1379, 1382 (9th Cir. 1987). Additionally, as stated by the Ninth Circuit in *United States v. Terry*, 911 F.2nd 272, 275 (9th Cir. 1990):

> A magistrate is permitted to draw reasonable inferences about where evidence is likely to be kept based on the nature of the evidence and the type of offense . . . He need not determine that the evidence sought is in fact on the premises to be searched . . . or that the evidence is more likely than not to be found where the search takes place . . . The magistrate need only conclude that it would be reasonable to seek the evidence in the place indicated in the affidavit.

Once made, the probable cause determination is entitled to "great deference" by reviewing courts. *United States v. Alexander*, 761 F.2nd 1294, 1300 (9th Cir. 1985). When evidence of probable cause is lacking, the court's remedy is to suppress any evidence seized, unless the officers relying on the warrant can show good faith. *United States v. Leon*, 468 U.S. 897, 903 (1984).

A warrant must be supported by "facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time." *Durham v. United States*, 403 F.2d 190, 193 (9th Cir. 1968). Although the intercepted phone call and the warrant application are separated by several months, the Court does not find that the phone call was stale evidence for this warrant application because the DTO was a long-running conspiracy and because the warrant sought records about the location of TT76, a potential "tool of the trade" that would be used for some time. The user of TT76 appears to indicate that he will get back into the groove *again, i.e.* if the Government's theory is correct the user is connecting with Parrish on a repeating basis. Staleness is not an issue.

ORDER – 5

The Court agrees with Mr. Jordan that the information provided to the magistrate judge for the initial GPS warrant was otherwise too thin to establish probable cause. *See* Dkt. #109 at 8–9. At the time, there was no evidence connecting TT76 to the DTO other than a handful of vague code words. Not everyone who calls a drug dealer is involved in the drug operation. There were insufficient facts to support the assertion that "moving and grooving" or "seventeen" are coded drug terms. The Court would have expected law enforcement to continue its investigation and to gather more support prior to seeking this GPS warrant.

However, this does not mean the evidence at issue must be suppressed. The Government argues the agents involved are entitled to a presumption of good faith. *See United States v. Leon*, 468 U.S. 897, 920–21 (1984). Under *Leon*, evidence is admissible if police obtained it in "objectively reasonable reliance" on a search warrant, even if a reviewing court later invalidates the warrant. *Id.* at 922. "When officers have acted pursuant to a warrant, the prosecution should ordinarily be able to establish objective good faith without a substantial expenditure of judicial time." *Id.* at 924. *Leon*'s good-faith exception applies in all but four circumstances: (1) when the warrant is "so facially deficient" that no executing officer could reasonably presume it to be valid; (2) when the warrant results from recklessly or knowingly misleading the issuing judge; (3) when the affidavit supporting the warrant is "bare bones"; and (4) when the issuing judge "wholly abandons his or her judicial role." *Id.* at 922–23. None of those circumstances apply to the first warrant here. There are no obvious facial deficiencies, there is an insufficient basis to conclude that agents were recklessly or knowingly misleading Judge Theiler, and the Court cannot find on these facts that Judge Theiler wholly abandoned her judicial role. Instead, Defendant argues and the key question appears to be whether this was a bare bones warrant application. The Court finds that it was not. The application contained extensive information

ORDER – 6

about Parrish and the DTO, as well as sufficient facts supporting Huntington's expertise on drug trafficking and code terms. The Court agrees with the Government that there was at least a colorable argument for probable cause and that this application was otherwise made in good faith. *See* Dkt. #114 at 16–17. The Court agrees that the application did not contain "misleading" statements. *See id.* at 18–20. Given all of the above, the *Leon* good-faith exception applies and precludes the relief requested in this Motion.

The subsequent Premises Warrant and later Search Warrant for the tablet had substantially more factual support for probable cause based on the above facts and Defendant has demonstrated no other valid basis to suppress the evidence obtained from those warrants.

Having reviewed the briefing for this Motion, along with the remainder of the record, the Court hereby finds and ORDERS that Defendant's Motion to Suppress, Dkt. #109, is DENIED.

DATED this 1st day of March, 2023.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER – 7